UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Ramirez et al | Civil Action No. 2:15-cv-01448 |
| versus | Unassigned District Judge |
| PNK Lake Charles LLC | Magistrate Judge Carol B. Whitehurst |

### REPORT AND RECOMMENDATION

Pending before the Court are two Motions For Summary Judgment, the first filed by defendant PNK Lake Charles LLC, d/b/a L'Auberge du Lac Casino Resort ("PNK") [Doc. 43], and the second filed by defendant Full Service Systems Corp. ("FSS") [Doc. 58]. Plaintiffs Julio Ramirez and Myriam Ramirez oppose both motions [Doc. 47 &61]. PNK filed two reply briefs [Doc. 52 & 64]; FSS also filed a reply brief [Doc. 67]. For the reasons that follow, the undersigned recommends that both motions for summary judgment be DENIED.

### *I. Background*

The instant lawsuit arises out of a slip and fall at the L'Auberge du Lac Casino in Lake Charles, Louisiana in the early morning hours of July 19, 2014. Plaintiffs are Julio Ramirez, who claims to have been injured after slipping and falling in a casino restroom, and his wife. The following facts are undisputed:

- The plaintiffs, Julio and Myriam Ramirez, arrived at the L'Auberge du

    Lac Casino in Lake Charles on Friday, July 18, 2014 at 9:00 p.m.[1]

- The plaintiffs' friends, Raj and Robin Mehta, arrived at the casino around 10:00 p.m.[2] Raj Mehta and Julio Ramirez played games downstairs while Robin Mehta and Myriam Ramirez went up to the hotel room that the group was sharing.[3]

- Julio Ramirez drank four to five beers, a shot of Patron, and a Crown Royal.[4] The plaintiff and his friend stayed downstairs from about 10:30 p.m. until 12:00 a.m.[5]

- At some point after midnight, the plaintiff went into the restroom but walked "slow" across the floor to a stall, because he saw "a lot of water on the floor."[6]

- When the plaintiff exited the men's restroom, he told Justin Vaughn, a PNK security employee, about the wet condition in the bathroom.[7] Mr. Vaughn radioed the building and grounds crew and informed them that the restroom needed attention.[8]

- After about two hours, the plaintiff went back into the same restroom

---

[1] *See* Deposition of Julio Ramirez, 49:12-50:7, attached as Exhibit 1 to PNK's motion for summary judgment [Doc. 43].

[2] *Id.* at 53:16-22.

[3] *Id.* at 53:3-13.

[4] *Id.* at 55:1-20.

[5] *Id.* at 55:21-56:2.

[6] *Id.* at 56:6-16.

[7] *Id.* at 56:17-25.

[8] *See* Deposition of Justin Vaughn, 8:9-9:1, attached as Exhibit 3 to defendant's motion for summary judgment.

and saw there was a "sign on it warning."[9] He walked "real slow" in the stall, but "lost control of his right leg, went down to my left, went under, my left, and hit my head against the wall."[10] The plaintiff reiterated that the first time he went into the restroom, there were no signs up.[11] The sign he saw the second time warned to be "cautious of wet floor in Spanish and English."[12]

- After exiting the stall, as he was walking to the sink, the plaintiff fell again. The plaintiff testified he was "dizzy" at the time.[13] The plaintiff did not tell anyone at the hotel or casino about his fall at that time, but instead decided to go back to his room, take a shower, and change his clothes.[14]

- The plaintiff proceeded to the elevator to go to his hotel room.[15] He fell down inside the elevator and another guest pushed the 15th floor button for him.[16] The plaintiff blacked out when he got to his floor, but was able to call his wife on his cellular phone.[17]

- After taking some Advil and applying some BenGay, with the assistance of his wife and their friend, the plaintiff went to sleep in his room.[18] He

---

[9] *See* Deposition of Julio Ramirez, at 57:1-4.

[10] *Id.* at 57:5-9.

[11] *Id.* at 57:16-18.

[12] *Id.* at 59:11-16.

[13] *Id.* at 61:10-18.

[14] *Id.* at 70:18-71:2.

[15] *Id.* at 63:1-8.

[16] *Id.* at 63:9-22.

[17] *Id.* at 64:21-65:14.

[18] *Id.* at 67:3-68:3.

3

    stayed at the hotel through Saturday and Saturday evening.[19]

- When the plaintiff, his wife, and their friends checked out of the hotel on Sunday morning, July 20, 2014, they informed a L'Auberge Emergency Medical Technician, Erin Benoit, about what had occurred.[20]

- At the time of the plaintiff's accident, there was a contractual agreement ("the agreement")[21] between PNK and FSS, a janitorial services contractor, under which PNK paid FSS to clean the common areas of the casino during the graveyard shift between 11:00 p.m. and 7:00 a.m.[22] Under the contract, the common areas of the casino include the restroom where the plaintiff's alleged accident occurred.

- Under the agreement, FSS was responsible for hiring and training its janitorial employees, who reported directly to FSS supervisors and managers. PNK did not instruct FSS employees on how to complete their job tasks, such as how to mop floors and/or place wet floor signs.

Plaintiff filed this action in the Fourteenth Judicial District Court for the Parish of Calcasieu, Louisiana on March 26, 2015, against PNK, seeking damages for his injuries. PNK removed the matter to this Court on April 29, 2015. On June 20, 2016, the plaintiff amended his Complaint to add Full Service Systems Corp. ("FSS") as a party defendant.

---

[19] *Id.* at 69:17-25.

[20] *Id.* at 72:24-74:3.

[21] The record shows the contract became effective on September 1, 2010, and continued on a month-to-month basis thereafter and was in effect on July 19, 2014, the date of the accident.

[22] *See* Affidavit of Anthony Long, Facilities Director at L'Auberge du Lac Casino Resort in Lake Charles, Louisiana. *See also* "Janitorial Services Agreement," attached as Exhibit 7 to PNK's motion for summary judgment.

On February 21, 2017, PNK filed a Motion for Summary Judgment [Doc. 43] seeking dismissal of all of the plaintiffs' claims on grounds the "wet floor" caution sign placed in the restroom demonstrates sufficient reasonable care as a matter of law, such that the plaintiff cannot meet the burden of proof under the Louisiana Merchant Liability Statute, La. Rev. Stat. §9:2800.6. PNK further argues the wet condition of the floor was open and obvious, precluding liability, and that PNK is not liable for any negligence on the part of its independent contractor, FSS. On August 7, 2017, FSS filed a stand-alone Motion for Summary Judgment arguing essentially the same grounds for dismissal.

## *II. Summary Judgment Standard*

Summary judgment is appropriate where the facts and law as represented in the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The party seeking summary judgment bears the initial burden of demonstrating

that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 47 U.S. 317, 325 (1986). Only after a proper motion for summary judgment is made must the non-movant set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

> As the Fifth Circuit has pointed out:
>
> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts*. ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." *Id*. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." *Id*. To the contrary, "[i]n reviewing all the evidence, the court must

disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the non-moving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### *III. Analysis*

The parties agree the plaintiffs' claims are governed by the Louisiana law of merchant liability, contained in La. Rev. Stat. §9:2800.6,[23] which provides in relevant part:

    A.    A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

    B.    In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

        (1)    The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

        (2)    The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

---

[23] District courts in Louisiana have applied the Louisiana merchant liability statute to casinos. *See, e.g., Rowell v. Hollywood Casino Shreveport*, 996 So.2d 476, 478 (La. App. 2nd Cir. 2008); *Harrison v. Horsheshoe Entertainment*, 823 So.2d 1124 (La. App. 2nd Cir. 2002).

> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.[24]

The Louisiana Supreme Court explained the requirements under the statute as follows:

> This statute is clear and unambiguous. The statute uses the mandatory "shall." ***Thus, in addition to all other elements of his cause of action, a claimant must also prove each of the enumerated requirements of Section (B). The conjunctive "and" follows Section (B)(2). Thus, Sections (B)(1), (B)(2), and (B)(3) are all mandatory.*** The requirement of Section (B)(2) is that the merchant created or had actual or constructive notice of the condition prior to the occurrence. That is clear and unambiguous. Constructive notice, at issue here, is defined by Section (C)(1). The definition is likewise clear and unambiguous. ***There is a temporal element included: "such a period of time ..." The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive***

---

[24] Section §9:2800.6 also provides:

    C.    Definitions:

        (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

        (2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

    D.    Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

La. Rev. Stat. §9:2800.6(C) & (D) (West 2010).

> ***showing of the existence of the condition prior to the fall.*** A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden.

*White v. Wal-Mart Stores, Inc.*, 699 So.2d 1081, 1084-85 (La. 1997) (emphasis added).

Under Louisiana law, to determine whether a condition is unreasonably dangerous, courts are required to consider the following factors in the risk-utility test: (1) the utility of the complained of condition, (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition, (3) the cost to prevent the harm, and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. *Bertaut v. Corral Gulfsouth, Inc.*, 209 So.3d 352, 356 (La. App. 5th Cir. 2016), *citing Bufkin v. Felipe's La., LLC*, 171 So.3d 851, 856 (La. 2014).

The second prong of the risk-utility test focuses on whether the allegedly dangerous or defective condition was obvious and apparent. A defendant generally does not have a duty to protect against that which is obvious and apparent. In order for an alleged hazard to be considered obvious and apparent, the hazard should be one that is open and obvious to everyone who may potentially encounter it. *Bertaut*, 209 So.3d at 356-57, *citing Bufkin*, 171 So.3d at 856; *Broussard v. State ex rel. Office of*

*State Buildings*, 113 So.3d 175, 184 (La. 2013); *Hutchinson v. Knights of Columbus, Council No. 5747*, 866 So.2d 228, 234 (La. 2004). If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. *Bertaut*, 209 So.3d at 357, *citing Upton*, 186 So.3d at 1200.

As a general matter, Louisiana district courts have held that an approximately three-foot high yellow warning cone containing the universal symbol for a wet floor is considered adequate to alert a patron of a hazardous condition. *See, e.g., Lee v. Ryan's Family Steak Houses, Inc.*, 960 So.2d 1042, 1047 (La.App. 1st Cir. 5/4/07). *See also Melancon v. Popeye's Famous Fried Chicken*, 59 So.3d 513, 515–516 (La.App. 3rd Cir. 3/16/11).

Here, the defendants argue the plaintiff cannot satisfy the first condition of the merchant liability statute – that is, unreasonable risk of harm – because under the analysis of this element, there may be no liability if the complained of condition was obvious to all. In the instant case, the record establishes that the janitorial staff of the casino placed a "wet floor" sign in the middle of the restroom, and the plaintiff testified he *saw* the wet floor sign. Therefore, the defendants argue the wet condition was open and obvious, and consequently, the risk of harm was not unreasonable.

The undersigned's analysis of the open and obvious element is informed by

two Louisiana district court cases. In *Rowell v. Hollywood Casino Shreveport*, 996 So.2d 476 (La. App. 2nd Cir. 2008), the plaintiff slipped and fell in the women's bathroom in a casino. According to the plaintiff's deposition testimony, the first two stalls were occupied and the third stall had a wet floor sign in the stall behind a closed stall door so she entered the fourth stall. The plaintiff testified that, as she was exiting the stall, she slipped and fell. *Rowell*, 996 So.2d at 479. According to Ms. Rowell, she did not notice the wet floor until after she fell. She testified that the puddle of water was on the floor between the stall door and the toilet. *Id.*

The trial court granted summary judgment in favor of the defendant casino. The plaintiff appealed, arguing the trial judge committed an error of law by holding that the wet floor did not present an unreasonable risk of harm and that the risk of harm was not reasonably foreseeable by Hollywood. In affirming the district court's grant of summary judgment in favor of the defendant casino, the appellate court noted:

> ***Ms. Guinn took photographs of the scene of the accident, which are contained in the record. The photographs clearly show the 24–inch high yellow wet floor caution cone placed near the drain in the middle of the bathroom floor, between the stalls and the sink area. The cone was resting close in proximity to where Ms. Rowell fell, just outside of the fourth stall. In addition, the handwritten description on the photographs indicates that Ms. Rowell was lying next to the wet floor cone when she was first seen by Ms. Guinn.*** Most significantly, while Ms. Rowell may take issue with the exact location of the wet floor cone, she admits observing the wet floor warning upon entering the women's restroom.

*Rowell*, 996 So. 2d at 478 (emphasis added).

Similarly, in *Bertaut v. Corrall Gulfsouth, Inc.*, 209 So.3d 352, 354 (La. App. 5th Cir. 2016), the plaintiff slipped and fell in a puddle of water while walking to her table with her food. The record showed the restaurant had placed a cone to warn of the wet condition in the vicinity of the plaintiff's fall, which the defendant argued rendered the condition open and obvious. The trial court granted summary judgment in favor of the restaurant and the plaintiff appealed. *Id.* at 355.

On appeal, the appellate court stated that "[a]n approximately three-foot high yellow warning cone containing the universal symbol for wet floor is considered adequate to alert a patron of a hazardous condition." *Id.* at 357, *citing Lee v. Ryan's Family Steak Houses, Inc.*, 960 So.2d 1042, 1047 (La.App. 1st Cir. 2007). *See also Melancon v. Popeye's Famous Fried Chicken*, 59 So.3d 513, 515-16 (La.App. 3rd Cir. 2011). In affirming the trial court, the appellate court stated:

> ***The surveillance video clearly reveals that Corral had a two to three foot high, bright yellow warning cone placed in the ice cream/dessert area near the corner where Mrs. Bertaut alleged she slipped***. Upon entering the restaurant and walking towards her table, which was near the warning cone, Mrs. Bertaut passed close to and looked directly at the bright yellow warning cone. ***The video subsequently clearly shows Mrs. Bertaut passing close to and within a clear line of sight of the yellow warning cone five more times prior to the accident***. Of the six times that Mrs. Bertaut passed close to the warning cone prior to her fall, Mrs. Bertaut walked three times over the exact place she alleged she slipped. It was not until the seventh time that Mrs. Bertaut fell. From the time the surveillance video began until Mrs. Bertaut fell (approximately 53

> minutes), the tile she stepped on when she fell was traversed 63 times by numerous other patrons, many of whom were carrying ice cream, food, or drinks.
>
> On de novo review of the motion for summary judgment, opposition, evidence, and testimony, we find Corral established Mrs. Bertaut would not be able to show that the condition (i.e., an alleged puddle of water) presented an unreasonable risk of harm, or that Corral failed to exercise reasonable care pursuant to La. R.S. 9:2800.6.

*Bertaut*, 209 So.3d at 357 (emphasis added).

In both *Rowell* and *Bertaut*, the findings of the court were informed by specific facts in the record pertaining to the exact placement and location of the warning cones in question. In *Bertaut*, <u>photographs</u> clearly showed the size of the cone and the fact that it was "placed near the drain in the middle of the bathroom floor, between the stalls and the sink area. The cone was resting close in proximity to where Ms. Rowell fell, just outside of the fourth stall." Similarly, in *Rowell*, <u>surveillance video</u> clearly revealed the height and size of the warning cone, as well as the placement of the cone "in the ice cream/dessert area near the corner where Mrs. Bertaut alleged she slipped." *Rowell*, 996 So. 2d at 478 (emphasis added).

In the instant case, it is undisputed that a warning cone was placed in the bathroom the second time the plaintiff went to the restroom, at which time the plaintiff fell. To the undersigned's knowledge, however, the record is devoid of factual evidence <u>showing the precise size and placement of the warning cone in</u>

question. Thus, although the plaintiff testified he *saw* a warning cone in the restroom, the precise location of the cone is unknown to the Court. Indeed, Justin Vaughn, the PNK security employee to whom the plaintiff first reported the wet condition in the restroom following his first trip to the restroom, testified as follows:

> Q: Did you ever see – I understand that there was a wet floor sign. Did you ever see where it was placed ion relation to – did you see where it was placed at all?
>
> A: No.[25]

The record establishes that although video surveillance of the plaintiff's first trip to the restroom exists, there is no video of the plaintiff's second trip to the restroom. In fact, the plaintiffs argue they are entitled to an adverse presumption in their favor based upon PNK's spoliation of evidence for failure to preserve the surveillance footage from the restroom at the time of the plaintiff's accident.

As an initial matter, the undersigned notes the plaintiff has set forth an improper standard by which the undersigned should consider the spoliation issue. Indeed, while the plaintiff argues Louisiana jurisprudence in contending he is entitled to a presumption that any video surveillance would be detrimental to PNK, the undesigned notes that in diversity cases, federal courts apply federal evidentiary rules rather than state spoliation laws. *See, e.g., Condrey v. SunTrust Bank of Georgia*, 431

---

[25] *See* deposition of Justin Vaughn, at 9: 15-19.

F.3d 191, 203 (5th Cir. 2005), *citing King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir.2003). The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of "bad faith" or "bad conduct." *Condrey*, 431 F.3d at 203.

In the instant case, the plaintiffs have shown no evidence of bad faith on the part of PNK vis-a-vis PNK's failure to preserve video surveillance of Mr. Ramirez's second trip to the restroom. Nor have the plaintiffs even alleged that PNK intentionally destroyed or intentionally failed to preserve the video. All that plaintiffs argue is that PNK has provided no "reasonable explanation" for why it has failed to provide the surveillance footage in question. In response, PNK has provided the affidavit of Jerry Forester, the Risk and Safety Manager at the casino, who attests as follows:

> 4) Surveillance of the Plaintiff speaking with the security officer Justin Vaughn was captured and retained. Surveillance video was kept for a limited time and then overwritten if not timely requested. The Plaintiff's second trip to the restroom was not timely retained because the surveillance department was unaware of the Plaintiff's second trip to the restroom.[26]

The plaintiffs do not controvert the attestations of Mr. Forester and have come forward with no evidence of bad faith on the part of PNK in failing to preserve the

---

[26] *See* Affidavit of Jerry Forester, attached as Exhibit 4 to PNK's motion for summary judgment, at ¶4.

requested surveillance footage.

Considering the foregoing, the undersigned finds the plaintiff is not entitled to the adverse presumption under the federal standard for spoliation. Nevertheless, because there are genuine issues of material fact regarding the precise size and placement of the warning cone inside the restroom at the time of the plaintiff's alleged accident, the undersigned cannot determine whether the condition in the restroom at the time of the plaintiff's alleged fall was open and obvious, and, consequently, cannot determine at this juncture whether the condition of the restroom was unreasonably dangerous. For this reason, summary judgment cannot be granted in favor of the defendants at this time. Inasmuch as the undersigned cannot determine whether the condition was unreasonably dangerous, the undersigned makes no finding with respect to whether PNK would be liable for the acts of its contractor FSS.

### *IV. Conclusion*

Based on the foregoing, IT IS RECOMMENDED that the Motion For Summary Judgment filed by defendant PNK Lake Charles LLC, d/b/a L'Auberge du Lac Casino Resort ("PNK") [Doc. 43] and the Motion for Summary Judgment filed by defendant Full Service Systems Corp. ("FSS") [Doc. 58] be DENIED for the reasons stated herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

THUS DONE AND SIGNED this 17th day of October, 2017, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE